PEOPLE *v* DAVENPORT

1. CRIMINAL LAW—CIRCUMSTANTIAL EVIDENCE—BURDEN OF PROOF.
   The prosecution has the burden of proving that there is no innocent theory possible which will, without violation of reason, accord with the facts, where the people's case is based on circumstantial evidence.

2. POISONS—POSSESSION OF NARCOTICS—EVIDENCE.
   Evidence was insufficient to support a conviction of possession of heroin where the evidence against the defendant consisted of the facts that defendant lived in the house where the heroin was found, that the heroin was found in the basement in a glass bottle which was in a bag with three plastic bottles not shown to contain heroin, and that the defendant's name was on one of the plastic bottles, where three other persons lived in the house and all had access

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 30 Am Jur 2d, Evidence § 1130.
[2] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 47.
[4] 41 Am Jur 2d, Indictments and Informations § 308

to the basement, and the other two plastic bottles bore the name of another resident; to establish joint possession an additional independent factor linking defendant with the narcotics must be shown, more than mere association.

3. CRIMINAL LAW—CIRCUMSTANTIAL EVIDENCE—INFERENCES.

Allowing a trier of fact to draw an inference in a criminal case only if the inference follows with impelling certainty inforces the requirement that, where the people's case is based on circumstantial evidence, the prosecution must negate every reasonable theory consistent with the defendant's innocence of the crime charged.

4. POISONS—POSSESSION OF NARCOTICS—EVIDENCE—ONE-COUNT INFORMATION—GENERAL VERDICT.

Defendant's conviction of possessing narcotics must be reversed, even though there was sufficient evidence to support a finding that defendant possessed marijuana, where defendant was charged with possession of both heroin and marijuana in a one-count information, the jury was instructed that the defendant was guilty if he possessed either heroin or marijuana, the possession of heroin had not been proved by the prosecution, and the jury returned a general verdict of guilty, because there is no way of determining if the jury's general verdict of guilty was based on finding defendant guilty of possession of marijuana or whether their verdict was based exclusively on a finding that he was in possession of heroin.

Appeal from Wayne, Blair Moody, Jr., J. Submitted Division 1 January 4, 1972, at Detroit. (Docket No. 10718.) Decided March 22, 1972.

Rosby Davenport was convicted of possession of narcotics. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Patricia J. Boyle,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

Before: LEVIN, P. J., and HOLBROOK and BRONSON, JJ.

LEVIN, P. J. Rosby Davenport, the defendant-appellant, and Lillie Green were convicted of possession of narcotics.[1] Davenport was sentenced to serve a term of four to ten years in prison. Green was placed on probation. Davenport appeals.

The jurors were instructed that they could convict Davenport of possessing a narcotic drug if they found that he was in possession of either .26 grams of heroin or 7.3 grams of marijuana which were discovered and seized by the police during a search of the house where Davenport and Green resided. We conclude that while there was sufficient evidence to support a verdict finding Davenport guilty of possessing the seized marijuana, the evidence was not sufficient to tie him to the heroin. Since the jury rendered a general verdict, we must reverse Davenport's conviction and remand for a new trial.[2]

At the trial, police officers testified that they knocked on the front door of the house. Davenport responded and peered at the officers through a window but did not answer the door. An officer announced that they had a search warrant and demanded entrance. The officers then observed Davenport rush past the door and up a stairway carrying a small box. They broke in the door and several officers rushed up the stairs.

A detective testified that he observed Davenport and Green tossing objects into a toilet in the bathroom at the head of the stairs. The detective retrieved from the flushing toilet three envelopes and a

---

[1] MCLA 335.153; MSA 18.1123.

[2] Our disposition of this case makes it unnecessary to consider the other assignments of error. We express no opinion concerning these other issues.

bit of loose plant-like material later identified as marijuana.

In the meantime other officers searched the house. In the basement, at the bottom of a barrel of soiled clothes, they discovered a bag. In the bag they found narcotics paraphernalia and a number of bottles, including three small plastic bottles and a larger bottle made of brown glass. Two of the small plastic bottles were labeled with prescriptions for "Ardis Phillips", another resident of the house. One of the small plastic bottles was labeled with a prescription for "R. Davenport". The three plastic bottles contained pills of one kind or another but there is no evidence of the kinds of pills, and, presumably, they were not narcotics. There were 43 capsules in the brown bottle. Five of the capsules contained a white powdery substance which was identified as part heroin. The other 38 capsules did not contain heroin. Four persons, Davenport, Green, Phillips and Walter Brown, lived in the house.

Davenport and Green were charged with possession of the .26 grams of heroin contained in the five capsules and of the 7.3 grams of marijuana retrieved from the flushing toilet.[3]

At the trial, Davenport and Green denied being in the bathroom or throwing anything into the toilet, and also denied having any knowledge of the bag found in the basement or its contents.

The issue which divided us in *People* v *Valot,* 33 Mich App 49 (1971), need not be reconsidered in order to decide this case. In this case, in contrast with

---

[3] The police also discovered and seized three marijuana cigarette butts found in Green's bedroom. Davenport and Green were cohabiting regularly. However, each had a separate bedroom and none of his clothing or personal effects were found in her bedroom. The information did not charge either of them with possession of the marijuana cigarette butts. A motion by the prosecutor, made during the course of the trial, to amend the information to add a charge based on the cigarette butts was denied.

*Valot* and *People* v *Harper,* 365 Mich 494 (1962), there is no evidence whatever tending to show that Davenport knew of the presence of the heroin found in the barrel in the basement.[4]

The evidence in this case regarding possession of the heroin is entirely circumstantial. The established rule is that where the people's case is based on circumstantial evidence the prosecution has the burden of proving "that there is no innocent theory possible which will, without violation of reason, accord with the facts". *People* v *Millard,* 53 Mich 63, 70 (1884); *People* v *Spann,* 3 Mich App 444, 454 (1966); *People* v *Morrow,* 21 Mich App 603, 606 (1970).[5] Davenport cannot be convicted on the theorem that *someone* must have been in possession of the heroin.

Davenport's residence in the house and the presence in the bag of a plastic bottle carrying a label bearing his name were the only evidence connecting him to the heroin found in the brown bottle.[6] Four persons lived in the house. It is not reasonable to infer from the fact that Davenport was one of the occupants that he—rather than Phillips or Brown or Green[7]—was the person who placed the capsules in

[4] In *People* v *Cardenas,* 21 Mich App 636, 638 (1970), there was evidence tending to show that the defendant knew precisely where the marijuana was located.

In *People* v *Iaconis,* 29 Mich App 443 (1971), the defendants were in close proximity to the heroin at the time the police entered and were all aware of the presence of the narcotics.

[5] 30 Am Jur 2d, Evidence, § 1125, pp 292, 296.

[6] Davenport denied that he placed the prescription bottle bearing his name in the bag and testified that the three pills in the bottle were not the medicine prescribed for him. The people did not attempt to rebut that testimony.

[7] Green testified that she did the laundry and that the laundry was kept in the barrel where the heroin was found. It may be reasonable to infer from this testimony that she was aware of the presence of the bag and of its contents, and from that knowledge to infer that she was in possession of the contents of the bag. Green has not appealed. Accordingly, there is no need to consider whether those are reasonable inferences or whether there was sufficient evidence to convict her of possession of heroin.

the brown bottle. In addition to the plastic bottle labeled with Davenport's name, there were two plastic bottles bearing the name of one of the other residents, Ardis Phillips. There was no evidence that the brown bottle, the bag, or the barrel belonged to Davenport. Clearly there were innocent theories—unrebutted by any evidence—which accord with the facts. It is as likely that Ardis Phillips or anyone else living in the house, who would have had equal access to the basement, was in possession of the heroin.

More than mere association must be shown to estabish joint possession. "An additional independent factor linking the defendant with the narcotic must be shown." *State* v *Faircloth,* 181 Neb 333, 337; 148 NW2d 187, 190 (1967). Similarly, see *United States* v *Bonds,* 435 F2d 164 (CA 9, 1970); *United States* v *Bethea,* 143 US App DC 68, 71; 442 F2d 790, 793 (1971); *Kirtley* v *State,* 245 So 2d 282 (Fla App, 1971).

It has been said that in a criminal case "not only must each of the facts from which the inference is drawn be proved beyond any reasonable doubt, but the inference itself must be such as admits of no other rational conclusion". *People* v *Sessions,* 58 Mich 594, 606 (1886) (per SHERWOOD, J). Accord: *Miller* v *State,* 250 Ind 338; 236 NE2d 173 (1968): "An inference, to be valid, must be logical [citation omitted]. It must follow as an impelling certainty from the circumstantial evidence which mothers it, or it is not proper." Similarly, see *State* v *Faircloth, supra.*

Allowing a trier of fact to draw an inference in a criminal case only if the inference follows with "impelling certainty" enforces the requirement that, where the people's case is based on circumstantial

evidence, the prosecution must negate every reasonable theory consistent with the defendant's innocence of the crime charged.

In a number of cases the evidence has been found insufficient to link a defendant in nonexclusive possession of premises or an automobile to narcotics found on the premises or in the automobile. See *Delgado* v *United States,* 327 F2d 641, 642 (CA 9, 1964), where marijuana was found in a nightstand near the defendants' bed—there was, said the Court, insufficient evidence "to support a finding, as to each defendant, that he or she had possession of the marijuana", and *Guevara* v *United States,* 242 F2d 745, 747 (CA 5, 1957), where marijuana was found on the floorboard of the defendant's automobile between the driver's seat, which was occupied by the defendant, and the passenger seat—the Court said "for all that the present evidence shows, it is just as reasonable to believe that the cigarettes belonged to the passenger as to the appellant". Similarly, see *People* v *Foster,* 115 Cal App 2d 866; 253 P2d 50 (1953); *Kirtley* v *State, supra; Evans* v *United States,* 257 F2d 121, 128 (CA 9, 1958). See, also, *People* v *Burrel,* 253 Mich 321 (1931).

Although there was sufficient evidence to support the verdict convicting Davenport of possession of marijuana, his conviction must be reversed and a new trial ordered. Davenport and Green were charged with possession of both heroin and marijuana in a one-count information. The jurors were instructed that they could find the defendants guilty if they found that they were in possession of either marijuana or heroin. They rendered a general verdict of guilty and, thus, there is no way of knowing whether they did in fact find Davenport guilty of possession of marijuana or whether their verdict was

exclusively based on a finding that he was in possession of heroin.[8]

Reversed and remanded for a new trial.

All concurred.

---

[8] See *Stromberg* v *California*, 283 US 359, 370; 51 S Ct 532, 536; 75 L Ed 1117, 1123 (1931); *Bachellar* v *Maryland*, 397 US 564, 570; 90 S Ct 1312, 1315–1316; 25 L Ed 2d 570, 575–576 (1970); *People* v *Purifoy*, 34 Mich App 318, 321 (1971); *United States* v *Meriwether*, 440 F2d 753, 757 (CA 5, 1971); *United States* v *Driscoll*, 449 F2d 894, 898 (CA 1, 1971).

*People* v *Taylor*, 386 Mich 204 (1971), is distinguishable. There the defendant was convicted of three separate counts of perjury. *Cf. United States* v *Driscoll*, *supra*. The Michigan Supreme Court held that the reversal of Taylor's conviction of two counts did not require a retrial of the third count. In *Taylor*, in contrast with this case, there were separate findings of guilty on each of the three separate charges. It, thus, was clear that the jury had in fact convicted Taylor of the one charge of which he could lawfully be convicted. The issue in *Taylor* was whether the submission to the jury of the two counts of which he could not be convicted was prejudicial because it might have influenced the jury in finding him guilty of the count of which he could lawfully be convicted.

*People* v *Ninehouse*, 227 Mich 480 (1924), is also distinguishable. There the defendant was charged in a one-count information with the unlawful "transportation and possession" of one pint of whiskey. The Michigan Supreme Court held that since the statute did not make it a crime to take a drink out of someone else's bottle the trial judge erred in instructing the jury that Ninehouse *must* be convicted of possession on his own admission that he took a drink out of the bottle, but affirmed his conviction of transporting the bottle because he was the driver of the automobile and knew that he was carrying intoxicating liquor in his automobile, thereby constituting the offense of unlawful transportation of liquor. In *Ninehouse*, in contrast with this case, there was no factual dispute; Ninehouse admitted he was transporting liquor. There, thus, was not the same need as there is here for additional fact finding by the trier of fact to determine whether the defendant had in fact committed acts denied by him which establish his commission of the charged offense.

*United States* v *Lee*, 422 F2d 1049, 1052 (CA 5, 1970); *McGriff* v *United States*, 408 F2d 333 (CA 9, 1969), are also distinguishable as they concern situations where a defendant is charged with unlawfully dealing with the same property in several different ways. Here, in contrast, with those cases, the charge is that Davenport dealt unlawfully in two different items of property; there was no evidence at all connecting him to one of the items, thereby distinguishing this case from *Lee*, where the defendants admitted signing the statement, and *McGriff*, where the evidence established that the defendant was involved with the stolen property.